## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

GJOVALIN GJERGJI,

        Petitioner,

vs.                        Case No.:    3:15-cv-1217-J-34MCR

JEH JOHNSON, SECRETARY OF
THE DEPARTMENT OF HOMELAND
SECURITY, et al.,

        Respondents.

_____/

### REPORT AND RECOMMENDATION[1]

Before the undersigned is Petitioner Gjovalin Gjergji's "Request for Emergency Hearing on Petitioner's Motion for Bail" (Doc. 19, Emergency Motion for Bail Hearing), which the undersigned granted (Doc. 22, Order Setting Hearing), as well as the corresponding Motion for Bail (Doc. 15, Motion for Bail)[2], and Respondent's Motion to Dismiss for lack of subject matter jurisdiction (Doc. 14, Motion to Dismiss).

Petitioner is an Albanian citizen, and a lawful permanent resident of the United States, whom Respondent has held in "mandatory" pre-removal detention for nearly 17

---

[1]     A party may file specific written objections to proposed findings and a recommended disposition within 14 days of service of a magistrate judge's report and recommendation. Fed. R. Civ. P. 72(b)(2); Rule 12 of the Rules Governing Section 2255 Proceedings; see also Fed. R. Civ. P. 6(d) (adding three days after period would otherwise expire if party must act within a specified period after service and service is made by electronic filing as provided by Fed. R. Civ. P. 5(b)(2)(E)). The district judge must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. [She] may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1); accord Fed. R. Civ. P. 72(b)(3). However, a district judge need not consider frivolous, conclusory, or general objections. Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988). A party's failure to specifically object in writing may alter the scope of appellate review. See Fed. R. Civ. P. 72(b)(3); Dupree v. Warden, 715 F.3d 1295, 1300 (11th Cir. 2013).

[2]     Although the Motion for Bail (Doc. 15) itself is not referred to me, I understand the referral of the Emergency Motion for Bail Hearing (Doc. 19) to necessarily encompass the Motion for Bail.

months without a bond hearing.[3]   Respondent contends that 8 U.S.C. § 1226(c) authorizes the Government to detain Petitioner this long – and apparently for longer, seeing how the clock will keep ticking – without an individualized determination of whether he is a flight risk or a danger to the community.   Petitioner has filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241,[4] in which he argues (1) that mandatory detention under 8 U.S.C. § 1226(c) does not apply to him as a statutory matter (see Doc. 1 at ¶¶ 4, 5, 22), and (2) even if it does, detaining him for such a prolonged period of time without a bond hearing violates Due Process (see id. at ¶¶  6, 21; see also Doc. 15 at 2-4).   The remedy Petitioner requests from the habeas petition is an order directing Respondent to afford him a bond hearing before an immigration judge.  (Doc. 1 at ¶ 7; see also id. at 8).

On May 5, 2016, the undersigned conducted an emergency bail hearing, as Petitioner requested.  For the reasons set forth below, I conclude that I lack the authority to grant Petitioner immediate release on bail.  However, as part of the analysis on the motion for bail, I write to recommend that Petitioner is substantially likely to succeed on the merits of his habeas petition.[5]   I further respectfully recommend that the proper remedy would be to grant the habeas petition, and direct the Immigration Judge to hold a prompt bond hearing.

---

[3]      At the time of the Court's emergency hearing on May 5, 2016, Petitioner had been in detention for 505 days to be exact.

[4]      Petitioner did not cite 28 U.S.C. § 2241 as the basis for his habeas petition, but "§ 2241 is the proper vehicle for individuals alleging that they are being illegally detained in immigration custody." Ajdahun v. Dep't of Homeland Security, Civil Action No. 1:11-2005, 2012 WL 2115522, at *1 (M.D. Pa. May 14, 2012) (citing Zadvydas v. Davis, 533 U.S. 678 (2001)).

[5]      At the hearing, the parties agreed that, practically speaking, the Report and Recommendation would be on the merits of the habeas petition itself.

## I.     Background

Petitioner is a native of Albania, and since July 14, 2007, he has been a lawful permanent resident of the United States.  (Doc. 1 at ¶¶ 12, 18).  Petitioner is married, and he has one child who is a United States citizen.  (Id. at ¶ 18).  Both of Petitioner's parents are United States citizens as well.  (Id.).  Petitioner owns a restaurant in Jacksonville, Florida – Toscana Little Italy – but he alleges the business has "deteriorated markedly" since his detention.  Petitioner's family is "suffering extreme hardship as a result" of their separation.  (Id.).

More than four years ago, in March 2012, the United States charged Petitioner for an offense he committed almost another five years earlier, in July 2007.  (See Crim. Doc. 96 at 7).[6] A grand jury indicted Petitioner on one count of selling a firearm to a convicted felon, in violation of 18 U.S.C. §§ 922(d) and 924(a)(2).[7]  (Crim. Doc. 1 at 1).  On May 23, 2012, United States Marshals arrested Petitioner pursuant to an arrest warrant.  (See Crim. Doc. 10).  The same day, however, the Honorable Thomas E. Morris, United States Magistrate Judge, granted Petitioner release upon posting a $5,000 unsecured bond. (See Crim. Doc. 9; Crim. Doc. 14).

Petitioner thereafter proceeded to a jury trial and was found guilty.  (Crim. Doc. 76).  On January 29, 2013, the Honorable Henry Lee Adams, Jr., United States District Judge, sentenced Petitioner to a term of three years' probation.  (Crim. Doc. 96 at 38; see also Crim. Doc. 89).  In doing so, Judge Adams noted that Petitioner had a substantial

---

[6]     Citations to the record in the previous criminal case, United States of America vs. Gjovalin Gjergji, Case No. 3:12-cr-50-J-25TEM, will be denoted as "Crim. Doc. __."  Citations to the record in the civil § 2241 case, Case No. 3:15-cv-1217-J-34MCR, will be denoted as "Doc. __."

[7]     The offense itself occurred nearly five years before the Indictment, in July 2007, when Petitioner was 19 years old.  (Crim. Doc. 96 at 7).

work history, significant support from his family and the community, and he was unlikely to recidivate.  (Crim. Doc. 96 at 39-40).

Nearly two years later, on December 17, 2014, agents from Immigration and Customs Enforcement (ICE) detained Petitioner on an administrative warrant and placed him in the Baker County Detention Facility, pending the completion of deportation proceedings.  The Department of Homeland Security alleged that Petitioner had been convicted of a removable offense, and further alleged that Petitioner had been convicted of a subset of offenses that subjected him to mandatory pre-removal detention under 8 U.S.C. § 1226(c).[8]  Specifically, Homeland Security "charged the respondent as removable under 8 U.S.C. § 1227(a)(2)(C) for having been convicted of selling a firearm… and under [8] U.S.C. § 1227(a)(2)(A)(iii) for having been convicted of an aggravated felony."  (Doc. 14 at ¶ 5).

On January 7, 2015, a United States Immigration Judge sustained the firearm charge under § 1227(a)(2)(C).  (Id. at ¶ 6).  On February 10, 2015, the Immigration Judge

---

[8] Title 8, United States Code Section 1226(c)(1) provides as follows:

The Attorney General shall take into custody any alien who--

> (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
>
> (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
>
> (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence[1] to a term of imprisonment of at least 1 year, or
>
> (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,

when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

also sustained the aggravated felony charge under § 1227(a)(2)(A)(iii), and consequently found that Petitioner was ineligible for cancellation of removal under 8 U.S.C. § 1229b. (Id. at ¶ 7).

Petitioner appealed the February 10, 2015 decision to the Board of Immigration Appeals (BIA).  The BIA evidently found merit in Petitioner's appeal, because on June 25, 2015, the BIA "remanded the case for further consideration and analysis of the aggravated felony charge."  (Doc. 14-1 at 5-6).  On remand, the Immigration Judge determined that Petitioner's conviction did not constitute an "aggravated felony." (Doc. 14 at ¶ 9).  Subsequently, on August 28, 2015, the Immigration Judge granted Petitioner his application for relief, cancellation of removal, and lawful permanent resident status. (See Doc. 1 at ¶ 19; Doc. 14-1 at 6).  Despite the favorable ruling for Petitioner, he remains in detention – still without having received a bond hearing – because Homeland Security appealed the Immigration Judge's order to the BIA, thereby blocking the order from becoming administratively final.

At the May 5 hearing, the parties agreed that, at least for the near future, there is no foreseeable end to Petitioner's detention.  Petitioner stated that he has moved the BIA to expedite the appeal, but there is no guarantee as to when the BIA will rule (accord Doc. 29 at 2), partly due to the substantial case load in the immigration courts.  The parties also agreed at the May 5 hearing that, regardless of how the BIA rules, the non-prevailing party will appeal to the Eleventh Circuit (accord id. at 2-3) – during which time Petitioner will remain in detention without receiving a bond hearing unless the Court grants the habeas petition.  Respondent stated that, if it loses before the BIA, it intends to appeal to the Eleventh Circuit.  Likewise, Petitioner stated that if he loses before the BIA, he too will

appeal to the Eleventh Circuit, because otherwise he will be deported to Albania, and because he believes the Immigration Judge's August 28, 2015 order is correct.  The parties agree that the issues before the BIA are complex and contentious.

Petitioner stated at the hearing that he has made around 15 written or oral requests for a bond hearing in immigration court, but the Immigration Judge has denied each request, citing the mandatory nature of Petitioner's detention under 8 U.S.C. § 1226(c).  Petitioner reported, however, and Respondent did not dispute, that the Immigration Judge has remarked that he would be inclined to release Petitioner on bond, because there is little evidence that Petitioner is a flight risk or a danger to the community.  (Accord Doc. 15 at 1-2).

## II.    The Parties' Arguments

In the Motion for Bail (Doc. 15), Petitioner argues that under Gomez v. United States, 899 F.2d 1124 (11th Cir. 1990), a District Court has the authority to release a prisoner on bail while his habeas petition is pending if he meets two requirements: (1) he has demonstrated a substantial likelihood of success on the merits, and (2) extraordinary and exceptional circumstances exist that make the grant of bail necessary to preserve the effectiveness of the habeas corpus relief sought.

As to the first prong, Petitioner contends there is a substantial likelihood his habeas petition will succeed on the merits on one of two grounds.  For the first ground, Petitioner contends that mandatory detention under § 1226(c) does not apply to him, by the statute's own terms, because (a) ICE did not detain him until 938 days after his release from post-arrest confinement, and (b) Petitioner's post-arrest confinement "was so ephemeral, less than one day, pretrial, [that] it does not trigger the mandate in… 8 U.S.C. § 1226(c) which

requires release after a term of incarceration upon conviction." (Doc. 15 at 3-4). For the second ground, Petitioner contends that the length of his detention without a bond hearing has grown unreasonably long, in violation of the right to Due Process. (Doc. 15 at 4 & n.4; see also Doc. 1 at ¶¶ 6, 21).

As to the second prong of the Gomez test, Petitioner contends that extraordinary circumstances exist to warrant bail. (Doc. 15 at 4-6). Petitioner points to several factors that he believes warrant immediate release on bond, including that: Petitioner has a wife and child; he faithfully attended all proceedings before the District Court during the criminal case; and a magistrate judge previously released him on bond upon finding that he was neither a flight risk nor a danger to the community. (Id. at 4-5). Petitioner also points out that, more recently, the Immigration Judge determined that Petitioner is entitled to remain in the United States as a lawful permanent resident. (Id. at 5).

Respondent opposes relief, though it primarily stands on its Motion to Dismiss for lack of subject matter jurisdiction. (Doc. 14).

On the eve of the May 5, 2016 hearing, the parties also filed a Joint Response. (Doc. 29). In the Joint Response, the parties state that they disagree about the Court's authority to "set aside Petitioner's detention" or to grant bail. (Id. at 1). The parties agree about the remedy, however, if the Court finds it has authority to grant bail. (Id. at 1-2). The parties agree that the undersigned should "issue a Report and Recommendation for the District Court judge to issue an order directing the Immigration Judge below to conduct an individualized bond hearing within thirty days of the remand and, if appropriate, to determine the appropriate conditions of release." (Id. at 2). The parties request an expedited schedule for filing objections to the Report and Recommendation. The parties

also agree that, were this Court to enter the order described above, the Immigration Judge would conduct a bond hearing, notwithstanding Respondent's objection to such relief. (Id.).

### III.    Respondent's Motion to Dismiss

Before proceeding further, the undersigned pauses to address Respondent's Motion to Dismiss.  (Doc. 14, Motion to Dismiss).  The Court has referred the Motion to Dismiss for a Report and Recommendation.  (Doc. 35).

Respondent contends that 8 U.S.C. § 1226(e) strips the Court of jurisdiction to entertain Petitioner's habeas petition.  That section provides as follows:

> (e) Judicial review
>
> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

8 U.S.C. § 1226(e).

Respondent overlooks the fact that in Demore v. Kim, the Supreme Court held that § 1226(e) does not strip a court of jurisdiction to entertain a habeas petition that challenges the constitutionality of an alien's confinement.  538 U.S. 510, 516-17 (2003). The Supreme Court

> has held that where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear. . .  And, where a provision precluding review is claimed to bar habeas review, the Court has required a particularly clear statement that such is Congress' intent. . .
>
> Section 1226(e) contains no explicit provision barring habeas review, and we think that its clear text does not bar respondent's constitutional challenge to the legislation authorizing his detention without bail.

Id. at 517 (internal quotation marks and citations omitted).  Like the petitioner in Demore, Petitioner here challenges the constitutionality of his confinement under § 1226(c), where Homeland Security has held him for nearly 17 months without an individualized determination of whether he is a flight risk or a danger to the community.

Numerous other circuits have held that § 1226(e) does not preclude a court from considering a habeas petition that challenges the constitutionality of the length of mandatory detention or the applicability of § 1226(c).  E.g., Sylvain v. Attorney General, 714 F.3d 150, 155 (3d Cir. 2013); Singh v. Holder, 638 F.3d 1196, 1202 (9th Cir. 2011); Al-Siddiqi v. Achim, 531 F.3d 490, 494 (7th Cir. 2008) (§ 1226(e) "strips us of our jurisdiction to review judgments designated as discretionary but does not deprive us of our authority to review statutory and constitutional challenges."); Oyelude v. Chertoff, 125 F. App'x 543, 546 (5th Cir. 2005)  ("[§ 1226(e)] does not deprive us of all authority to review statutory and constitutional challenges. We retain jurisdiction to review Oyelude's detention insofar as that detention presents constitutional issues, such as those raised in a habeas petition."); Gonzalez v. O'Connell, 355 F.3d 1010, 1014 (7th Cir. 2004) (recognizing that Demore rejected the argument that § 1226(e) strips a court of jurisdiction to entertain habeas petitions or constitutional challenges to mandatory detention); Sierra v. I.N.S., 258 F.3d 1213, 1218 (10th Cir. 2001) ("We hold that § 1226(e) does not 'speak[] with sufficient clarity to bar jurisdiction pursuant to the general habeas statute.'") (quoting I.N.S. v. St. Cyr, 121 S. Ct. 2271, 2286 (2001)).

The clear weight of authority is against Respondent's contention that § 1226(e) strips the Court of jurisdiction over Gjergji's habeas corpus petition.  The undersigned recommends that Gjergji's petition for a writ of habeas corpus is properly before the Court.

Accordingly, the undersigned respectfully recommends that the Court deny Respondent's Motion to Dismiss.

## IV.   Analysis of Petitioner's Motion for Bail

### A.  Standard

A district court has the power to release a habeas petitioner on bail if he satisfies two criteria: (1) he has demonstrated a substantial likelihood of success on the merits, and (2) extraordinary and exceptional circumstances exist that make the grant of bail necessary to preserve the effectiveness of the habeas corpus relief sought.  Gomez, 899 F.2d at 1125.  A court cannot release a habeas petitioner on bail, however, if "release [on bail] affords the defendant more relief temporarily than he would be entitled to even if he prevails in his habeas corpus action[.]"  Id.

### B.  Substantial Likelihood of Success on the Merits of the Habeas Petition

#### 1.  Petitioner's First Merits Argument:  Whether mandatory detention under 8 U.S.C. § 1226(c) applies

Petitioner's first argument regarding his entitlement to habeas relief concerns whether mandatory detention applies to him in the first instance, as a statutory matter. Petitioner asserts that § 1226(c) requires Respondent to detain an alien "when," read to mean "as soon as," the alien is released from custody.  Petitioner contends that mandatory detention under § 1226(c) does not apply to him because ICE did not detain him until 938 days after he was released from a brief period of post-arrest confinement. Petitioner suggests that unless the Government detains an alien immediately after his release, the Government forfeits its authority to exercise mandatory detention under § 1226(c).  Petitioner also suggests that mandatory pre-removal detention does not apply

because § 1226(c) requires the alien to be released from a term of post-conviction incarceration, whereas the custody from which Petitioner was released was merely a brief period of post-arrest confinement.

The undersigned recommends that this particular argument lacks a substantial likelihood of success on the merits.  According to nearly ever circuit court of appeals to have addressed the issue, mandatory detention under § 1226(c) applies even where the Government does not immediately detain a qualifying alien upon his release from custody.  E.g., Lora v. Shanahan, 804 F.3d 601, 610-13 (2d Cir. 2015); Sylvain, 714 F.3d at 161, supra (3d Cir.); Hosh v. Lucero, 680 F.3d 375, 378-83 (4th Cir. 2012); see also Casteneda v. Souza, 810 F.3d 15, 45-62 (1st Cir. 2015) (en banc) (opinion of Kayatta, Howard, and Lynch, JJ.).  But see Casteneda, 810 F.3d at 15-43 (opinion of Barron, Torruela, and Thompson, JJ.).  Only one half of an equally-divided en banc panel, out of the First Circuit, has endorsed Petitioner's view that the Government cannot exercise mandatory detention if it fails to immediately detain an alien upon his release.  See id. The undersigned finds the reasoning of the Second, Third, and Fourth Circuits to be more persuasive.  As the Fourth Circuit pointed out, nothing in § 1226(c) suggests that the Government forfeits its authority to mandatorily detain a qualified alien if the Government fails to exercise that authority immediately upon the alien's release from custody.  Hosh, 680 F.3d at 381-83; id. at 381 ("a statute directing official action needs more than a mandatory 'shall' before the grant of power can sensibly be read to expire when the job is supposed to be done.") (quoting Barnhart v. Peabody Coal Co., 537 U.S. 149, 161 (2003)).

Moreover, the Second and Third Circuits have addressed, and rejected, the argument that mandatory detention under § 1226(c) applies only to aliens released from a sentence of imprisonment.  Lora, 804 F.3d at 609-10; Sylvain, 714 F.3d at 161.  The Tenth Circuit Court of Appeals has also expressed doubt about this argument.  Olmos v. Holder, 780 F.3d 1313, 1327 (10th Cir. 2015) (citing In re Kotliar, 24 I. & N. Dec. 124, 125 (B.I.A. 2007); In re West, 22 I. & N. Dec. 1405, 1410 (B.I.A. 2000); Sylvain, 714 F.3d at 161).  As the Lora court pointed out, the text of § 1226(c) "clearly contemplates non-carceral sentences," and Congress did not limit mandatory detention only to aliens who received a sentence of imprisonment.  804 F.3d at 610.  Accordingly, I respectfully recommend that Petitioner's statutory challenge lacks a substantial likelihood of success on the merits.

### 2. Petitioner's Second Merits Argument:  Whether the length of Petitioner's mandatory detention, without an individualized bond hearing, violates the Due Process Clause of the Fifth Amendment

Petitioner's second merits argument is that the length of his detention under § 1226(c), without having received a bond hearing, has grown unreasonably long, in violation of his right to due process under the Fifth Amendment.  The undersigned finds considerable merit to this argument, and respectfully recommends that Petitioner is substantially likely to succeed on the merits of this claim.

The Fifth Amendment entitles aliens to due process in deportation proceedings.  Reno v. Flores, 507 U.S. 292, 306 (1993).  "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."  Zadvydas v. Davis, 533 U.S. 678, 693 (2001).

As a general matter, the Supreme Court has upheld the constitutionality of mandatory pre-removal detention for that subset of aliens identified in § 1226(c), whom Congress has determined categorically to pose a risk of flight or dangerousness. Demore, 538 U.S. at 513; see also id. at 517-21 (describing the problem of criminal aliens evading removal by failing to appear at deportation proceedings). The Supreme Court held "that Congress, justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers, may require that persons such as respondent be detained for the brief period necessary for their removal proceedings." Id. at 513 (emphasis added). Congress could, consistent with due process, require the brief detention of certain aliens under § 1226(c) pending completion of removal proceedings, without affording them individualized bond hearings, by relying on a blanket presumption of flight and dangerousness based on the crime for which the alien has been convicted. Chavez-Alvarez v. Warden, York Cnty. Prison, 783 F.3d 469, 473 (3d Cir. 2015) (discussing Demore, among other cases).

In sustaining the constitutionality of mandatory detention under § 1226(c), however, the Supreme Court expressly relied on the assumption that mandatory detention has a "definite termination point." Id. at 529. The Supreme Court also relied on a body of statistics showing that, in the majority of cases, mandatory detention lasts less than 90 days. Id. at 529-30; see also Diop v. ICE/ Dep't of Homeland Security, 656 F.3d 221, 233 (3d Cir. 2011) ("Demore emphasized that mandatory detention pursuant to § 1226(c) lasts only for a 'very limited time' in the vast majority of cases.") (citing Demore, 538 U.S. at 529 & n.12). The Supreme Court recounted these figures as follows:

> The Executive Office for Immigration Review has calculated that, in 85% of
> the cases in which aliens are detained pursuant to § 1226(c), removal

proceedings are completed in <u>an average time of 47 days and a median of 30 days</u>. Brief for Petitioners 39–40. In the remaining 15% of cases, in which the alien appeals the decision of the Immigration Judge to the Board of Immigration Appeals, appeal takes <u>an average of four months, with a median time that is slightly shorter</u>. <u>Id.</u>, at 40.

These statistics do not include the many cases in which removal proceedings are completed while the alien is still serving time for the underlying conviction. <u>Id.</u>, at 40, n. 17. In those cases, the aliens involved are never subjected to mandatory detention at all. In sum, the detention at stake under § 1226(c) lasts <u>roughly a month and a half</u> in the vast majority of cases in which it is invoked, and <u>about five months in the minority of cases in which the alien chooses to appeal.</u>

<u>Demore</u>, 538 U.S. at 529-30 (emphasis added).  The <u>Demore</u> Court rejected the alien's constitutional challenge in that case to mandatory detention, where he "was detained for somewhat longer than the average—spending six months in INS custody prior to the District Court's order granting habeas relief, but respondent himself had requested a continuance of his removal hearing."  <u>Id.</u> at 530-31 (footnote omitted).

In a concurring opinion, Justice Kennedy wrote to observe that, while pre-removal detention without a bond hearing is constitutional, it can grow so long that it violates Due Process.  <u>Id.</u> at 531-33 (Kennedy, J., concurring).  "[S]ince the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien… could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified."  <u>Id.</u> at 532 (citing <u>Zadvydas v. Davis</u>, 533 U.S. 678, 684-86 (2001)).

Subsequently, every circuit court of appeals to have addressed the issue has held that due process imposes a limit on how long the Government can detain an alien under § 1226(c) before it must afford him a bond hearing.  <u>E.g.</u>, <u>Lora</u>, 804 F.3d at 613-17; <u>Rodriguez v. Robbins</u>, 715 F.3d 1127, 1138 (9th Cir. 2013) ("Consistent with our previous

decisions, we conclude that, to avoid constitutional concerns, § 1226(c)'s mandatory language must be construed 'to contain an implicit "reasonable time" limitation, the application of which is subject to federal-court review.'") (quoting Zadvydas, 533 U.S. at 682); Diop, 656 F.3d at 233 ("In short, when detention [under § 1226(c)] becomes unreasonable, the Due Process Clause demands a hearing, at which the Government bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute."); see also Ly v. Hansen, 351 F.3d 263, 268 (6th Cir. 2003) ("Therefore, we hold that the INS may detain prima facie removable aliens for a time reasonably required to complete removal proceedings in a timely manner.  If the process takes an unreasonably long time, the detainee may seek relief in habeas proceedings."). Thus,

> the constitutionality of [mandatory detention] is a function of the length of the detention. At a certain point, continued detention becomes unreasonable and the Executive Branch's implementation of § 1226(c) becomes unconstitutional unless the Government has justified its actions at a hearing inquiring into whether continued detention is consistent with the law's purposes of preventing flight and dangers to the community.

Diop, 656 F.3d at 232 (footnote omitted).

The only difference among these circuits is how to measure whether mandatory detention has grown unreasonably long.  The Second and Ninth Circuits have adopted a "bright-line" test, holding that an alien's mandatory detention becomes presumptively unreasonable after six months, at which point the Government can no longer justify further detention without making an individualized showing that the alien is a flight risk or a danger to the community.  Lora, 804 F.3d at 614-15, 616; Rodriguez, 715 F.3d at 1137-38 (concluding that, in order to avoid constitutional concerns, § 1226(c) contains an implicit temporal limit on mandatory detention, which is reached at the six-month mark).

The Second Circuit provided a number of reasons for adopting the bright-line approach: (1) the Supreme Court itself "has recognized that bright-line rules provide clear guidance and ease of administration to government officials," id. at 615, including in the context of post-removal detention, where the Supreme Court adopted a six-month rule "for the sake of uniform administration" and limiting the need for lower courts to make difficult judgments, id. (quoting Zadvydas, 533 U.S. at 700-01); (2) where large immigration dockets exist, a case-by-case approach would be unworkable, id. at 615-16; and (3) "without a six-month rule, endless months of detention, often caused by nothing more than bureaucratic backlog, has real-life consequences for immigrants and their families," id. at 616.

The Third and Sixth Circuits, by contrast, have adopted a case-by-case approach. E.g., Diop, 656 F.3d at 233; Ly, 351 F.3d at 271.  As the Third Circuit put it, "due process requires us to recognize that, at a certain point – which may differ case by case – the burden to an alien's liberty outweighs a mere presumption that the alien will flee and/or is dangerous." Chavez-Alvarez, 783 F.3d at 474-75.  A court's task is to weigh the goals of the mandatory detention statute against the personal costs to the alien's liberty.  Id. at 475.  The various factors these courts consider include: the individual detainee's need for more or less time, Diop, 656 F.3d at 234; the exigencies of a particular case, id.; whether errors in the immigration proceedings have caused delay, id.; and the length of the alien's detention relative to how long Congress and the Supreme Court contemplated mandatory detention lasting, id. at 234-35.  With respect to the last factor, the Third Circuit stated:

> [W]e note that the reasonableness of any given detention pursuant to §
> 1226(c) is a function of whether it is necessary to fulfill the purpose of the
> statute, and, given that Congress and the Supreme Court believed those
> purposes would be fulfilled in the vast majority of cases within a month and

a half, and five months at the maximum, see Demore, 538 U.S. at 530, 123
S.Ct. 1708, the constitutional case for continued detention without inquiry
into its necessity becomes more and more suspect as detention continues
past those thresholds.

Id. at 234.   Additional factors include whether "the Government was responsible for

creating unreasonable delays," Chavez-Alvarez, 783 F.3d at 475 (citing Diop, 656 F.3d

at 234); the conditions of the alien's confinement, id. at 478; whether the alien has

contributed to the delay, Ly, 351 F.3d at 272; and whether the alien is ultimately

removable, because if not (for example, due to the lack of a repatriation treaty with the

destination country), mandatory detention cannot further the goal of deportation, id. at

271-72.

Importantly, the courts that follow the case-by-case approach caution against

holding the alien responsible for his own detention merely because he seeks an appeal.

An alien who would not normally be subject to indefinite detention cannot
be so detained merely because he seeks to explore avenues of relief that
the law makes available to him. Further, although an alien may be
responsible for seeking relief, he is not responsible for the amount of time
that such determinations may take. The mere fact that an alien has sought
relief from deportation does not authorize the INS to drag its heels
indefinitely in making a decision. The entire process, not merely the original
deportation hearing, is subject to the constitutional requirement of
reasonability.

Id. at 272.  See also Chavez-Alvarez, 783 F.3d at 475-76 (rejecting the contention that

an alien is responsible for prolonging his detention if he remains confined while pursuing

a good faith appeal); Leslie v. Attorney General, 678 F.3d 265, 271 (3d Cir. 2012) (court

cannot "effectively punish" an alien for exercising their right to appeal by rendering "the

corresponding increase in time of detention [as] reasonable.").

The undersigned recognizes that a case is pending before the Eleventh Circuit,

Maxi Sopo v. U.S. Attorney General, Case No. 14-11421, where the circuit may address

whether to adopt a bright-line standard or a case-by-case approach to determining if an alien's mandatory detention has become unreasonably long.  The undersigned does not find it necessary to choose one standard or the other, however. Under either approach, Petitioner's mandatory detention has become unreasonably long.

Under the six-month bright-line approach adopted by the Second and Ninth Circuits, Petitioner's mandatory detention, now running on 17 months, is clearly unreasonable.   Petitioner became entitled to an individualized bond hearing approximately 11 months ago.

Under the case-specific approach, Petitioner's nearly 17-months-long detention is still unreasonable.  Seventeen months is more than triple the length of time that Congress and the Supreme Court contemplated mandatory detention would typically last, even in cases where the alien sought an appeal.  See Demore, 538 U.S. at 529-30 (noting that the average length of mandatory detention, where the alien pursued an appeal, was four or five months).  And whereas Demore assumed that mandatory detention would "have a definite termination point," id. at 529, that is not the case here.  Both parties agreed at the May 5 hearing that it is unknowable when the BIA will decide Respondent's appeal. (Accord Doc. 29 at 2).  Even when the BIA does issue a ruling, Petitioner's detention will not end, because both parties agreed that the non-prevailing party will appeal the BIA's decision to the Eleventh Circuit.  (Accord id. at 2-3).  Neither party has given an estimate as to how long he expects that appeal to take.  Thus, contrary to the typical assumption that mandatory detention has an obvious termination point, that is not so in Petitioner's case.  Petitioner could languish in detention indefinitely for the foreseeable future, without

the Respondent being required to show that Petitioner actually presents a risk of flight or dangerousness.

To the credit of both Petitioner and Respondent, neither side accuses the other of using dilatory tactics or seeking unreasonable delays.  At the May 5 hearing, the parties instead attributed the delay to the enormous backlog of cases in the immigration courts, as well as the complexity and contentiousness of the issues raised in Respondent's current BIA appeal.

Certainly, there is no indication that Petitioner has done anything to prolong his detention.  Although Petitioner appealed the Immigration Judge's initial decision that his conviction constituted an "aggravated felony," which extended his detention for four months between February 2015 and June 2015, the Court should not hold Petitioner responsible for "the corresponding increase in time of detention." Leslie, 678 F.3d at 271; see also Chavez-Alvarez, 783 F.3d at 475-76; Ly, 351 F.3d at 272.  Petitioner was pursuing a good-faith appeal, and in fact, it was an appeal on which Petitioner succeeded. The BIA vacated the Immigration Judge's decision that Petitioner had committed an aggravated felony, and it remanded for further consideration. (See Doc. 14-1 at 5-6).  On remand, the Immigration Judge determined that the conviction was not an aggravated felony. (See Doc. 14 at ¶ 9).  Subsequently, the Immigration Judge granted Petitioner cancellation of removal and lawful permanent resident status.  (See Doc. 1 at ¶ 19; Doc. 14-1 at 6).  Petitioner only remains in detention because now Respondent is appealing the latest decision to the BIA.  Because the four-month delay pending resolution of Petitioner's appeal was necessary to correct an oversight in the first immigration proceeding, this delay cannot be blamed on Petitioner.  See Diop, 656 F.3d at 234 ("But

we also conclude that reasonableness must take into account errors in the proceedings that cause unnecessary delay.  No system of justice can be error-free, and those errors require time to fix.").

Although Respondent itself may not have acted in bad faith either, that is not a compelling reason to allow Petitioner to remain in detention without a bond hearing.  The Third Circuit's reasoning is on point:

> The flaw in the Government's argument is that it too closely ties the reasonableness of the detention to the way it acted during the removal process. The primary point of reference for justifying the alien's confinement must be whether the civil detention is necessary to achieve the statute's goals: ensuring participation in the removal process, and protecting the community from the danger that he or she poses. See Demore, 538 U.S. at 528, 123 S.Ct. 1708. Therefore, it is possible that a detention may be unreasonable even though the Government has handled the removal case in a reasonable way.

Chavez-Alvarez, 783 F.3d at 475 (citation omitted).  "[I]ndividual actions by various actors in the immigration system, each of which takes only a reasonable amount of time to accomplish, can nevertheless result in the detention of a removable alien for an unreasonable, and ultimately unconstitutional, period of time."  Diop, 656 F.3d at 223. Thus, even if the agency prosecuting the removal case behaves reasonably, the cumulative delays caused by other actors, including immigration tribunals (even though these other actors may also be behaving reasonably), can amount to an unreasonable delay.  If Homeland Security detains more people than the immigration courts are staffed to process in a timely manner, no matter how diligent each actor is, that problem belongs to Respondent, not the individuals left to languish in confinement without an individualized bond hearing.[9]

---

[9]      Thus, the undersigned does not criticize, but commends the judges of the immigration courts, who must undertake the Herculean task of managing the country's massive immigration docket.  The Orlando

Chavez-Alvarez illustrates this point.  In that case, the court acknowledged that neither Petitioner, the Government, nor the immigration courts had individually caused unreasonable delays.  783 F.3d at 477.  The delay in that case arose from the alien raising complex legal issues.  Id. at 475.  However, the alien raised those legal challenges in good faith.  Id. at 476-77.  Despite the lack of bad faith on either side, the court held that, somewhere between six months and a year into the alien's detention, "the balance of interests at stake tipped in favor of Chavez-Alvarez's liberty interests."  Id. at 477.  The immigration judge issued a final order nine months into the alien's detention, id. at 472, at which point, according to the court, the length of the alien's confinement "strain[ed]  any common-sense definition of a limited or brief civil detention," id. at 477.  The court explained that

> having held Chavez–Alvarez for this amount of time, the Government had, by then, enough exposure to Chavez–Alvarez, and sufficient time to examine information about him to assess whether he truly posed a flight risk or presented any danger to the community. Therefore, reviewing Chavez–Alvarez's detention would not have put the Government in a disadvantaged position to make its case.

Id.  Additionally, the court observed

> that the parties had, by then, a good understanding of the credibility and complexity of Chavez–Alvarez's case. Because of this, they could have reasonably predicted that Chavez–Alvarez's appeal would take a substantial amount of time, making his already lengthy detention considerably longer.

Id. at 477-78.  Accordingly, the court concluded that "certainly at the one-year mark for Chavez-Alvarez's detention, we are convinced that any ground for credibly claiming that a final resolution was reasonably within reach would have vanished."  Id. at 478.

---

immigration court, for example, has six judges, see https://www.justice.gov/eoir/orlando-immigration-court#about, who must handle more than 4,100 immigration cases each year, or roughly 700 cases per judge, per year.  https://www.justice.gov/sites/default/files/pages/attachments/2016/04/08/fy15syb.pdf.

Like in <u>Chavez-Alvarez</u>, Petitioner's nearly 17-months-long detention without a bond hearing "strain[s] any common-sense definition of a limited or brief civil detention," <u>id.</u> at 477, and "any ground for credibly claiming that a final resolution [is] reasonably within reach [has] vanished," <u>id.</u> at 478.  Indeed, the parties agree that there is no end in sight to Petitioner's removal proceedings.  (<u>See</u> Doc. 29 at 2-3).  Petitioner has not drawn out the length of his detention by using dilatory tactics; to the contrary, he has moved the BIA to expedite the appeal (Doc. 29 at 2).  Petitioner's lengthy stay at Baker County Detention Facility only grows longer due to reasons outside of the Petitioner's control.

That brings the undersigned to another factor bearing on the reasonableness of mandatory detention.  The undersigned "cannot ignore the conditions of confinement." <u>Chavez-Alvarez</u>, 783 F.3d at 478.  Respondent holds aliens whose removal proceedings are pending at a location it leases from the Baker County Detention Center, which is the Baker County jail.  Thus, Respondent is holding Petitioner at the same location, albeit in a different space, as those who have been arrested for committing crimes.  Petitioner alleges that

> the conditions at Baker are deplorable and far below domestic and international legal and moral standards for immigration detention.  At Baker immigrants are subject to confinement indoors 24 hours per day and lack exposure to sunlight, [experience] poor nutrition and hygiene, inadequate medical and mental-health care, isolation from family, arbitrary and unjust punishment, violation of religious freedom, and barriers to legal access.

(Doc. 1 at ¶ 20).  The undersigned has no comment on whether all of these allegations are true, but the undersigned has little doubt that the conditions of confinement at the Baker County Detention Facility are unpleasant, and that merely labeling Petitioner's confinement "'civil detention' does not, of itself, meaningfully differentiate it from penal measures."  <u>Chavez-Alvarez</u>, 783 F.3d 478.

Moreover, the undersigned cannot ignore that, according to Petitioner at the May 5 hearing, the Immigration Judge has remarked that there is little evidence that Petitioner actually presents a risk of flight or dangerousness. (<u>Accord</u> Doc. 15 at 1-2). According to Petitioner, the Immigration Judge has also commented that, were it not for the mandatory nature of Petitioner's detention, he would be inclined to release Petitioner on bond. (<u>Accord id.</u> at 2). Respondent did not dispute this account, and the undersigned has little reason to do so either. Indeed, in the federal criminal case, Magistrate Judge Thomas Morris released Petitioner on a $5,000 unsecured bond, reflecting that the Court did not find Petitioner to be a flight risk or a danger to the community at that time. Petitioner has a wife and child, a business, and two parents who are United States citizens. The criminal conduct for which the United States prosecuted Petitioner occurred nine years ago, in July 2007, when Petitioner was 19 years old. (<u>See</u> Crim. Doc. 96 at 7). Thus, the record on its face suggests that Petitioner is not actually a flight risk or a danger to the community.

Finally, "[t]he goal of pre-removal incarceration must be to ensure the ability of the government to make a final deportation… The actual removability of a criminal alien therefore has bearing on the reasonableness of his detention prior to removal proceedings." <u>Ly</u>, 351 F.3d at 271 (citing <u>Zadvydas</u>, 533 U.S. at 690). In his latest decision, the Immigration Judge determined that Petitioner's criminal conviction did <u>not</u> qualify as an aggravated felony within the meaning of 8 U.S.C. § 1227(a)(2)(A)(iii). (Doc. 14 at ¶ 9). The Immigration Judge thus found Petitioner eligible for cancellation of removal, and granted him lawful permanent resident status. (<u>See</u> Doc. 1 at ¶ 19; Doc. 14-1 at 6). Thus, the Immigration Judge's latest decision calls Petitioner's very removability

into doubt.  Because Petitioner's removability is questionable, it is debatable whether Petitioner's continued detention, without so much as a bond hearing, serves the purposes of § 1226(c).

Mandatory detention under § 1226(c) was intended to last only a very brief period of time, and it is based only on a blanket presumption that aliens convicted of certain crimes are a flight risk or a danger to the community.  The goal of detaining an alien under § 1226(c) is to ensure the alien's presence at removal proceedings, and ultimately, to ensure his deportation.  Here, it is clear that the connection between the goals of mandatory detention and Petitioner's 17-months-long confinement has broken down.  Petitioner's detention without a bond hearing has gone on far longer than Congress or the Supreme Court anticipated, with no end in sight; Petitioner has not contributed to delay; there is evidence that the presumption of flight-risk or dangerousness that underpins § 1226(c) does not actually apply to Petitioner; and his very removability is questionable.  Due process forbids further detention of Petitioner unless Respondent can make an individualized showing that he is a flight risk or a danger to the community.  Therefore, the undersigned respectfully recommends that Petitioner is substantially likely to succeed on the merits of his habeas petition as to this ground.

### C. Whether granting bail is necessary to preserve the effectiveness of the habeas corpus relief sought

The second prong of the Gomez analysis is whether extraordinary and exceptional circumstances exist that make the grant of bail necessary to preserve the effectiveness of the habeas corpus relief sought.  Gomez, 899 F.2d at 1125.  A court, however, cannot release a habeas petitioner on bail if doing so would provide "more relief on a preliminary basis than he would be entitled to if he ultimately prevails on his constitutional claims.

Litigants are not entitled to greater temporary remedies pending litigation than they would be entitled to as the ultimate prevailing party." Id. at 1127 (citing DeBeers Mines v. United States, 325 U.S. 212, 220 (1945)).

Although the undersigned finds that Petitioner is substantially likely to succeed on the merits of his habeas petition, the undersigned concludes that the Court lacks authority to grant him immediate release on bail.  Granting Petitioner immediate release on bail would give him temporary relief that exceeds the remedy if he succeeds on the habeas petition.

When an alien successfully challenges his mandatory detention under 8 U.S.C. § 1226(c), the proper remedy is to order the immigration court to hold a prompt bond hearing, or else require the Government to release the petitioner.  See, e.g., Chavez-Alvarez, 783 F.3d at 478 ("We will reverse the District Court's order, and remand with instruction to enter an order granting the writ of habeas corpus and ensure that Chavez–Alvarez is afforded, within ten days of the entry of this order, a hearing to determine whether, on evidence particular to Chavez–Alvarez, it is necessary to continue to detain him to achieve the goals of the statute."); Diop, 656 F.3d at 235 ("Should the length of his detention become unreasonable, the Government must justify its continued authority at a hearing at which it bears the burden of proof."); Javier v. Lowe, Civil No. 1:16-CV-561, 2016 WL 1569941, at *4 (M.D. Pa. Apr. 18, 2016) (recommending that district judge order immigration judge to hold a bond hearing; recommendation adopted by district court); Grodski v. Reno, 950 F. Supp. 339, 343 (N.D. Ga. 1996) (directing Government to release alien by certain date unless the immigration judge held a bond hearing at which it was determined that petitioner was a flight risk).

Thus, the remedy if Petitioner succeeds on the habeas petition is a prompt bond hearing before the Immigration Judge, <u>not</u> immediate release (even if the Immigration Judge is likely to release the alien on bond anyway).  For the Court to grant Petitioner immediate release on bail would be to give him a greater remedy than what he is entitled to if he succeeds on the habeas petition.  Accordingly, the undersigned respectfully recommends that the Court cannot grant Petitioner immediate release on bail.

## V.     Conclusion

Accordingly, for the reasons set forth above, the undersigned respectfully recommends that:

1.  The Court deny Respondent's Motion to Dismiss (Doc. 14);

2.  With respect to the Motion for Bail (Doc. 15):

    a.  Petitioner has demonstrated a substantial likelihood of success on the merits of his habeas petition (Doc. 1) for the reasons set forth in Part IV.B.2 of this Report and Recommendation.  Specifically, Petitioner's Due Process challenge to the length of mandatory detention is substantially likely to succeed;

    b.  Although the undersigned recommends that Petitioner is substantially likely to succeed on the merits, the undersigned respectfully recommends that the Court lacks authority to grant immediate release on bail.  Immediate release on bail would provide greater preliminary relief than the remedy for succeeding on the habeas petition, which is a prompt bond hearing before the Immigration Judge;

    c.  Accordingly, the Motion for Bail (Doc. 15) should be denied.

3. If the Court agrees with the reasons set forth under Part IV.B.2, the Court should enter an order granting the habeas petition and "directing the Immigration Judge below to conduct an individualized bond hearing within thirty days of the remand and, if appropriate, to determine the appropriate conditions of release."  (Doc. 29 at 2).

**DONE AND ENTERED** at Jacksonville, Florida this 19th day of May, 2016.

MONTE C. RICHARDSON
United States Magistrate Judge

Copies:

The Honorable Marcia Morales Howard
United States District Judge

Petitioner Gjovalin Gjergji

Counsel of record