**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

GJOVALIN GJERGJI,

      Petitioner,

v.                                                                                            Case No. 3:15-cv-1217-J-34MCR

JEH JOHNSON, SECRETARY OF
THE DEPARTMENT OF HOMELAND
SECURITY, et al.,

      Respondents.

_____

## ORDER

**THIS CAUSE** is before the Court on the Report and Recommendation (Doc. 37; Report), entered by the Honorable Monte C. Richardson, United States Magistrate Judge, on May 19, 2016. In the Report, Magistrate Judge Richardson recommends that: Respondent's Motion to Dismiss (Doc. 14; Motion to Dismiss) be denied; Petitioner's Motion for Bail (Doc. 15; Bail Motion) be denied; and the Petition for Writ of Habeas Corpus (Doc. 1; Petition) be granted. See Report at 1, 26-27. On June 3, 2016, Respondents filed objections to the Report. See Respondents' Objections to Magistrate Judge's Report and Recommendation (Doc. 38; Objections). Petitioner responded to the Objections on June 6, 2016. See Petitioner's Response to the Magistrate Judge's May 19, 2016 Report and Recommendation and the Respondents' Objections (Doc. 39; Response). Additionally, the parties filed the Joint Response to Court's May 3, 2016 Order (Doc. 29; Joint Response)

setting forth their positions regarding the appropriate remedy should the Court determine it has the authority to grant the Bail Motion. Accordingly, this matter is ripe for review.

The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b). If no specific objections to findings of facts are filed, the district court is not required to conduct a de novo review of those findings. See Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th Cir. 1993); see also 28 U.S.C. § 636(b)(1). However, the district court must review legal conclusions de novo. See Cooper-Houston v. Southern Ry. Co., 37 F.3d 603, 604 (11th Cir. 1994); United States v. Rice, No. 2:07-mc-8-FtM-29SPC, 2007 WL 1428615, at * 1 (M.D. Fla. May 14, 2007).

Upon independent review of the file and for the reasons stated in the Magistrate Judge's Report, the Court will accept and adopt the legal and factual conclusions recommended by the Magistrate Judge to the extent that Respondent's Motion to Dismiss will be denied, and Gjergji's Petition for Writ of Habeas Corpus will be granted. Although the Court did not refer the Petition to Magistrate Judge Richardson, his analysis of the Motion for Bail required him to consider the merits of the Petition, and the parties agreed that Magistrate Judge Richardson's Report would be a recommendation on the merits of the Petition itself.[1] See Transcript of Emergency Hearing on Petitioner's Motion for Bail (Doc.

---

[1] In the Joint Response, the parties state that "[i]f the Magistrate Judge issues a Report and Recommendation remanding for a bond hearing within thirty days, the parties ask for a brief, expedited opportunity to review and file any objections," which they have done. Joint Response at 2. The parties further agreed that if Gjergji prevailed on his Petition, then "the appropriate remedy would be for the Magistrate Judge to issue a Report and Recommendation for the District Court judge to issue an order directing the Immigration Judge below to conduct an individualized bond hearing within thirty days of the remand and, if appropriate, to determine the appropriate conditions of release." Id.

40; Tr. at 16). In evaluating the merits of Gjergji's Petition, the Magistrate Judge concluded that Gjergji was likely to succeed on his due process challenge to the length of his mandatory detention. The Court agrees, but writes to supplement the Report to address the Petition in light of Sopo v. U.S. Att'y Gen., --- F.3d ----, No. 14-11421, 2016 WL 3344236 (11th Cir. June 15, 2016), which the Eleventh Circuit issued after Magistrate Judge Richardson entered his Report. Additionally, because the Court determines that the Petition is due to be granted, the Bail Motion will be denied as moot. As such, the Court declines to address the Magistrate Judge's recommendation that the Bail Motion be denied on the merits.[2]

## I. Background

The parties do not dispute any material facts. Gjergji, an Albanian citizen, entered the United States in January 2003. Motion to Dismiss, Ex. 1 at 5. On August 5, 2005, the Government granted Gjergji derivative asylee status through his parents in removal proceedings. Id. Gjergji became a lawful permanent resident of the United States on July 14, 2007. Id. He is married and has one child who is a United States citizen. Petition at ¶ 18. His parents are United States Citizens as well. Id.

On March 28, 2012, a grand jury indicted Gjergji on one count of unlawful sale of a firearm in violation of 18 U.S.C. §§ 922(d) and 924(a)(2) in case number 3:12-cr-50-J-

---

[2] The Court notes that the standard identified by the Magistrate Judge in section IV.A for analyzing the Bail Motion is not precisely accurate. The Eleventh Circuit set forth that standard as follows: "A prisoner seeking release pending habeas corpus can be granted bail under two sets of circumstances: *first*, he must demonstrate a likelihood of success on the merits of a substantial constitutional claim; *second*, extraordinary and exceptional circumstances must exist which make the grant of bail necessary to preserve the effectiveness of the habeas corpus relief sought. Gomez v. United States, 899 F.2d 1124, 1125 (11th Cir. 1990) (citing Calley v. Callaway, 496 F.2d 701, 702 (5th Cir. 1974)) (italics in original; underlining added). Although the Magistrate Judge stated the standard somewhat differently, see Report at 10, the Court need not consider the effect of the different standard as the Bail Motion is due to be denied as moot.

25TEM.[3]  Criminal Doc. 1.  United States Marshals arrested Gjergji pursuant to an arrest warrant on May 23, 2012.  See Criminal Doc. 10.  On the same day, the Honorable Thomas E. Morris, United States Magistrate Judge, ordered Gjergji's release upon posting a $5,000 unsecured bond.  See Criminal Docs. 9, 14, 15.

On January 29, 2013, following a jury trial, the Honorable Henry Lee Adams, Jr., United States District Judge, adjudicated Gjergji guilty of unlawful sale of a firearm and sentenced him to a term of three years' probation.  See Criminal Docs. 88, 89.  At the sentencing hearing, Judge Adams stated that he considered many factors in determining that Gjergji was not likely to recidivate, including his family and community support, as well as his substantial work history and successful business.  See Criminal Doc. 96 at 39-40.  Judge Adams also "considered the fact that [Gjergji] was 19 years old [in 2007] when this offense occurred," but the United States did not charge him until five years later.  Id. at 40.

On December 17, 2014, Immigration and Customs Enforcement (ICE) took Gjergji into custody and detained him without bond pursuant to 8 U.S.C. § 1226(c) pending immigration removal proceedings. Petition at ¶ 1.  In so doing, the Department of Homeland Security (DHS) served Gjergji with a Notice to Appear in removal proceedings, alleging that his unlawful sale of a firearm conviction made him removable under 8 U.S.C. § 1227(a)(2)(C), and that the conviction was an aggravated felony, which made Gjergji removable under 8 U.S.C. § 1227(a)(2)(A).  Motion to Dismiss at ¶ 5.

On January 7, 2015, the immigration judge (IJ) sustained DHS's charge that Gjergji was removable under § 1227(a)(2)(C).  Id. at ¶ 6.  The following month, on February 10,

---

[3] Citations to the record in Gjergji's criminal case will be denoted as "Criminal Doc. ____."

2015, the IJ sustained DHS's charge that Gjergji was removable under § 1227(a)(2)(A) and determined Gjergji was ineligible for withholding of removal. Id. at ¶ 7. Gjergji appealed the IJ's February 10, 2015 decision to the Board of Immigration Appeals (BIA), and on June 25, 2015, the BIA remanded the case for further consideration and analysis of the aggravated felony charge. Id. at ¶ 8. On remand, the IJ found that Gjergji's conviction of unlawful sale of a firearm did not constitute an aggravated felony, and on August 28, 2015, the IJ granted Gjergji's application for cancellation of removal. Id. at ¶ 9. However, Gjergji remains in detention at Baker County Detention Center without bond while DHS appeals the IJ's order to the BIA. Petition at ¶ 1.

On October 14, 2015, Gjergji commenced the instant action challenging his detention. See Petition. In the Petition, Gjergji states that he owns a restaurant in Jacksonville and asserts that his business has "deteriorated markedly" during his detention. Id. at ¶ 18. Gjergji maintains that his family is "suffering extreme hardship as a result" of his detention. Id. In light of these assertions, on January 29, 2016, Gjergji filed a Motion for Bail, in which he seeks release pending the Court's resolution of claims in his Petition. See Bail Motion. Gjergji also filed a motion requesting an emergency hearing on the Bail Motion, see Petitioner's Request for Emergency Hearing on Petitioner's Motion for Bail; Doc. 19., and Magistrate Judge Richardson granted that request holding an emergency hearing on May 5, 2016, see Order; Doc. 22.[4] At the hearing before Judge Richardson, Gjergji stated that

---

[4] With respect to the Bail Motion, the Magistrate Judge determined Gjergji was not entitled to release pending resolution of the Petition, "because immediate release on bail would provide greater preliminary relief than the remedy for succeeding on the habeas petition, which is a prompt bond hearing before the Immigration Judge." Report at 24-26 (citing Gomez 899 F.2d at 1127). As previously noted, the Court need not address the Magistrate Judge's recommendation as to the Bail Motion, because by ruling on the Petition, the Court
(continued...)

he has asked the BIA to expedite the appeal, but there is no way to know when the appeal would be final. Tr. at 6. Notably, the parties agreed that, regardless of how the BIA rules, the non-prevailing party will appeal the decision to the Eleventh Circuit Court of Appeals and Gjergji will remain in mandatory detention pending that appeal. Id. Gjergji has asked the IJ for a bond hearing at least ten to fifteen times, including some formal, written requests. Id. at 5.

## II. Discussion

Although the Respondents moved to dismiss the Petition arguing that the Court lacks subject matter jurisdiction to review Gjergji's challenge to his mandatory detention, the Magistrate Judge found that position to be lacking in merit and recommended denial of the Motion to Dismiss. The Court agrees with the Magistrate Judge's analysis of the Motion to Dismiss and will accept and adopt his reasoning and his recommended resolution of the Motion to Dismiss. As such, the Motion to Dismiss is due to be denied, and the Court will turn to the merits of the Petition. In his Petition, Gjergji asserts that mandatory detention under 8 U.S.C. § 1226(c) does not apply to him. Additionally, Gjergji contends that if he is subject to mandatory detention under § 1226(c), his prolonged and continued detention violates his due process rights.

**A.   Whether Gjergji is Subject to Mandatory Detention Under 8 U.S.C. § 1226(c)**

Gjergji contends that he is not subject to mandatory detention under § 1226(c) because: (1) DHS did not take him into immigration custody immediately after his release

---

[4](...continued)
renders moot the Bail Motion.

from criminal custody; and (2) he was never "released" as contemplated by the statute, because he was only released from a brief period of post-arrest confinement and the court sentenced him to probation rather than imprisonment. As the Magistrate Judge concluded in the Report, these arguments are unavailing.

Title 8 U.S.C. § 1226(c) provides, in relevant part, that "[t]he Attorney General shall take into custody any alien who . . . is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title . . . when the alien is released." (emphasis added). Gjergji does not dispute that his conviction falls under § 1182(a)(2). Instead, he argues that the mandatory detention statute applies only where an alien is detained by DHS immediately after being released from post-conviction incarceration.

The Eleventh Circuit has not yet considered this issue. However, the Second, Third, Fourth, and Tenth Circuits have held that § 1226(c) applies even when the Government does not detain the alien immediately after his release from custody. See Lora v. Shanahan, 804 F.3d 601, 613 (2d Cir. 2015) (stating that "we join the Third, Fourth, and Tenth Circuits in holding that DHS retains its authority and duty to detain an alien even if not exercised immediately upon the alien's release"); Olmos v. Holder, 780 F.3d 1313, 1324 (10th Cir. 2015); Sylvain v. Att'y Gen. of the United States, 714 F.3d 150, 156-57 (3d Cir. 2013); Hosh v. Lucero, 680 F.3d 375, 381 (4th Cir. 2012). In determining that DHS retains its authority to detain an alien even if not exercised immediately upon the alien's release from criminal custody, the Second Circuit applied the two-step Chevron[5] inquiry to evaluate the BIA's interpretation of § 1226(c). See Lora, 804 F.3d at 610-13 (explaining that "[b]ecause we are

---

[5]Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837 (1984).

faced wtih an administrative agency's interpretation of a statute, we follow the two-step Chevron inquiry"). At the first step, the court concluded that the "when . . . released" language in § 1226(c) is ambiguous as to whether detention must immediately follow release to be mandatory. Id. at 611. ("[W]e have little trouble concluding that it is ambiguous whether 'when . . . released' should be given the 'duty-triggering' construction or the 'time-limiting' construction."). Because the court determined that § 1226(c) was ambiguous, it went on to evaluate "whether the BIA's interpretation of section 1226(c) [was] permissible and thus entitled to Chevron deference." Id. at 611. The court held that the BIA's interpretation was not "arbitrary, capricious, or manifestly contrary to the statute." Id. at 612. Additionally, the court found that

> the BIA's interpretation has the added benefit of accounting for practical concerns arising in connection with enforcing the statute. Particularly for criminal aliens in state custody, it is unrealistic to assume that DHS will be aware of the exact timing of an alien's release from custody, nor does it have the resources to appear at every location where a qualifying alien is being released.

Id. at 612-13. Thus, the court concluded that "an alien may be subject to mandatory detention even where DHS does not immediately detain the alien after release from criminal custody." Id. at 613.

The Fourth Circuit similarly held the BIA's interpretation of § 1226(c), that an alien need not be taken into ICE custody immediately after release from state custody to be subject to mandatory detention, should be given deference. Hosh, 680 F.3d at 380 (citing In re Rojas, 23 I. & N. Dec. 117 (BIA 2001)). Also, the Third Circuit in Sylvain explained that "[e]ven if the statute calls for detention 'when the alien is released,' and even if 'when' implies a short time frame, nothing in the statute suggests that officials lose authority if they

delay." Sylvain, 714 F.3d at 157. Although, one-half of an equally-divided en banc panel of the First Circuit Court of Appeals reached the opposite conclusion, see Castaneda v. Souza, 810 F.3d 15 (1st Cir. 2015) (en banc), like the Magistrate Judge, this Court is persuaded by the reasoning set forth by the Second, Third, Fourth and Tenth Circuits. Accordingly, Gjergji is not entitled to habeas relief based on ICE's delay in taking him into custody.

Next, Gjergji contends that only release from post-conviction imprisonment constitutes a "release" for purposes of applying the mandatory detention provision of § 1226(c). Gjergji argues that mandatory detention does not apply to him, because the court released him on bond the same day that United States Marshals arrested him, and the court only sentenced him to probation. This argument also fails. The BIA has held that release following arrest satisfies the § 1226(c) release requirement. See In re West, 22 I. & N. Dec. 1405, 1410 (BIA 2000) (holding that "released" in this context can also refer to release from physical custody following arrest when the alien was arrested and released on bond). In addition, the BIA has held that an alien who did not serve prison time and was apprehended from his home while on probation was subject to mandatory detention under § 1226(c). See Matter of Kotliar, 24 I. & N. Dec. 124, 125 (BIA 2007).

While the Eleventh Circuit has not reached this issue, this Court is persuaded by the Second and Third Circuits, which have concurred with the BIA's determination that a pre-conviction release after arrest satisfies § 1226(c)'s release requirement. See Gonzalez-Ramirez v. Sec'y of U.S. Dep't of Homeland Sec., 529 F. App'x 177, 181 (3d Cir. 2013) (holding that a criminal alien's release from pre-conviction custody fulfilled the release

requirement for triggering mandatory detention); Sylvain, 714 F.3d at 161 (holding that petitioner's "release from the 2007 arrest that led to his conviction and conditional discharge certainly fulfilled the release requirement"); Lora, 804 F.3d at 610 ("[W]e conclude that an alien who has been convicted of a qualifying crime under section 1226(c) is subject to mandatory immigration detention, whether he is sentenced to a prison term or to probation."). Additionally, the Third Circuit rejected the argument that an alien is not subject to mandatory detention when he is sentenced only to probation. See Desrosiers v. Hendricks, 532 F. App'x 283, 285 (3d Cir. 2013) (holding that the language in § 1226(c) "clearly contemplates convictions resulting in probationary sentences"). The Second Circuit reached the same conclusion. See Lora, 804 F.3d at 610 (holding that "an alien who has been convicted of a qualifying crime under § 1226(c) is subject to mandatory immigration detention, whether he is sentenced to a prison term or to probation"). The Court agrees with the interpretation of the Second and Third Circuits. Accordingly, Gjergji is not entitled to habeas relief on the basis of his claim that § 1226(c) only applies where an alien is released from post-conviction imprisonment.

**B.  Whether Gjergji's Continued Mandatory Detention Violates His Due Process Rights**

Alternatively, Gjergji contends that his prolonged mandatory detention under § 1226(c) without a bond hearing violates his due process rights under the United States Constitution. As such, he asks this Court to order the IJ to conduct a bond hearing to determine whether his continued detention is necessary.

Title 8 U.S.C. § 1226 authorizes the Government to detain aliens during removal proceedings. Specifically, subsection (a) of § 1226 provides for the arrest and detention of

an alien "pending a decision on whether the alien is to be removed from the United States," and subsection (c) "requires the Attorney General to take criminal aliens into custody 'when released' from criminal custody and only permits the release of such aliens for limited witness protection purposes." Reid v. Donelan, 819 F.3d 486, 493 (1st Cir. 2016) (footnotes omitted).

In Demore v. Kim, 538 U.S. 510 (2003), the United States Supreme Court considered the constitutionality of § 1226(c)'s mandatory detention scheme.  Upholding its constitutionality, the Court determined that "Congress, justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers, may require that [certain aliens] be detained for the brief period necessary for their removal proceedings." Id. at 513.  In reaching this conclusion, "the Supreme Court emphasized that the purpose of the mandatory detention in § 1226(c) is to prevent deportable criminal aliens from absconding and from committing more crimes before they are removed." Sopo, --- F.3d at ----, 2016 WL 3344236 at *9 (citing Demore, 538 U.S. at 518-20, 527-28).

Notably, the Eleventh Circuit Court of Appeals recently observed that "[w]hile Demore upheld § 1226(c)'s provision mandating detention of criminal aliens during removal proceedings, it did so with a strong constitutional caveat about due process concerns as to continued mandatory detention where the duration of the removal proceedings is unreasonably long or delayed." Sopo, --- F.3d at ----, 2016 WL 3344236 at *10.  Indeed, in recognizing that "the Fifth Amendment entitles aliens to due process of law in deportation proceedings," Demore, 538 U.S. at 523 (quoting Reno v. Flores, 507 U.S. 292, 306 (1993)),

the Supreme Court held only that "the Government may constitutionally detain deportable aliens during the <u>limited period necessary</u> for their removal proceedings," <u>Demore</u>, 538 U.S. at 526. (emphasis added).

Important to the Supreme Court's determination that mandatory detention under § 1226 survived a constitutional due process challenge in <u>Demore</u> was its consideration of removal proceeding statistics. In reaching its decision the Court relied on statistics showing that, in the majority of cases, a criminal alien's removal proceedings lasted less than 90 days. <u>Id.</u> at 529 ("[I]n 85% of the cases in which aliens are detained pursuant to § 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days. In the remaining 15% of cases, in which the alien appeals the decision of the [IJ] to the [BIA], appeal takes an average of four months, with a median time that is slightly shorter.") (internal citations omitted). The Court concluded that mandatory detention under § 1226(c) "lasts roughly a month and a half in the vast majority of cases" and up to "about five months" where the alien appeals. <u>Id.</u> at 530. Noting that Demore had been in custody only slightly longer than average and that he, himself had requested a continuation of his removal hearing, the Court determined that his due process challenge failed. <u>Id.</u> at 531.

Since the Supreme Court decided <u>Demore</u>:

> every federal court of appeals to examine § 1226(c) has recognized that the Due Process Clause imposes some form of "reasonableness" limitation upon the duration of detention that can be considered justifiable under that statute. See <u>Lora v. Shanahan</u>, 804 F.3d 601, 606 (2d Cir. 2015); <u>Rodriguez v. Robbins</u> (<u>Rodriguez I</u>), 715 F.3d 1127, 1138 (9th Cir. 2013)[, <u>cert. granted</u>, --- S. Ct. ----, No. 15-1204, 2016 WL 1182403 (June 20, 2016)]; <u>Diop v. ICE/Homeland Sec.</u>, 656 F.3d 221, 232–33 (3d Cir. 2011); <u>Ly v. Hansen</u>, 351 F.3d 263, 269–70 (6th Cir. 2003). And, each circuit has found it necessary to read

> an implicit reasonableness requirement into the statute itself, generally based on the doctrine of constitutional avoidance. See Lora, 804 F.3d at 614; Rodriguez I, 715 F.3d at 1138; Diop, 656 F.3d at 235; Ly, 351 F.3d at 270.

Reid v. Donelan, 819 F.3d 486, 494 (1st Cir. 2016).  Most recently, in Sopo, the Eleventh Circuit joined the First, Second, Third, Sixth, and Ninth Circuits in holding that § 1226(c) contains "an implicit temporal limitation at which point the government must provide an inidvidualized bond hearing to detained criminal aliens whose removal proceedings have become unreasonably prolonged."  Sopo, --- F.3d at ----, 2016 WL 3344236 at *12 (citing Demore, 538 U.S. at 532 (Kennedy, J., concurring)).

While the circuit courts have been unanimous in concluding that § 1226(c) contains an implicit temporal limitation, they have split on how to determine the point at which mandatory detention without a bond hearing becomes unreasonable.  See Sopo, --- F.3d at ----, 2016 WL 3344236 at *1.  The Second and Ninth Circuits have adopted a bright-line rule, holding that "the government's 'statutory mandatory detention authority under Section 1226(c) . . . [is] limited to a six-month period, subject to a finding of flight risk or dangerousness.'"  Lora, 804 F.3d at 614 (quoting Rodriguez, 715 F.3d at 1133).  Under this bright-line rule, every alien detained under § 1226(c) "must be afforded a bail hearing before an immigration judge within six months of his or her detention."  Id. at 616.  In contrast, the First, Third, and Sixth Circuits have adopted a case-by-case approach, "requiring an assessment of all of the circumstances of any given case" to determine whether detention without an opportunity for a bond hearing is unreasonable.  Diop, 656 F.3d at 234; see also Reid, 819 F.3d at 498; Ly, 351 F.3d at 271.

On June 15, 2016, the Eleventh Circuit issued the Sopo decision in which it adopted the case-by-case approach espoused by the First, Third, and Sixth Circuits, explaining that "'[r]easonableness, by its very nature, is a fact-dependent inquiry requiring an assessment of all of the circumstances of any given case.'" Sopo, --- F.3d at ----, 2016 WL 3344236 at *13 (quoting Diop, 656 F.3d at 234). In doing so, the court explained, "Several factors should guide a district court in determining whether a particular criminal alien's continued detention, as required by § 1226(c), is necessary to fulfilling Congress's aims of removing criminal aliens while preventing flight and recidivism." Sopo, --- F.3d at ----, 2016 WL 3344236 at *15. "[O]ne critical factor is the amount of time that the criminal alien has been in detention without a bond hearing." Id. With respect to this first factor, the Eleventh Circuit instructed as follows:

> Given that Congress and the Supreme Court believed that most removal proceedings would be completed within five months, and the Supreme Court provided for a six-month rule in Zadvydas,[6] "the constitutional case for continued detention <u>without inquiry into its necessity</u> becomes more and more suspect as detention continues past those thresholds." See id.[7] (emphasis added). Accordingly, there is little chance that a criminal alien's detention is unreasonable until at least the six-month mark.
>
> Looking to the outer limit of reasonableness, we suggest that a criminal alien's detention without a bond hearing may often become unreasonable by the one-year mark, depending on the facts of the case. See Chavez-Alvarez v. Warden York Cty. Prison, 783 F.3d 469, 478 (3d Cir. 2015) ("[B]eginning sometime after the six-month timeframe considered by Demore, and certainly by the time [the alien] had been detained for one year, the burdens to [the alien's] liberties outweighed any justification for ... detain[ing] him without bond to further the goals of

---

[6] Zadvydas v. Davis, 285 F.3d 398 (5th Cir. 2002).

[7] Diop v. ICE/Homeland Sec., 656 F.3d 221, 234 (3d Cir. 2011).

-14-

> the statute."). The need for a bond inquiry is likely to arise in the six-month to one-year window, at which time a court must determine whether the purposes of the statute—preventing flight and criminal acts—are being fulfilled, and whether the government is incarcerating the alien for reasons other than risk of flight or dangerousness. See Demore, 538 U.S. at 532-33 (Kennedy, J., concurring). The government is not required to free automatically a criminal alien who obtains a bond hearing; but the government must at least afford the alien an individualized bond inquiry.

Sopo, --- F.3d at ----, 2016 WL 3344236 at *15.

The Eleventh Circuit identified the reason why the removal proceedings have become protracted as "[a] second factor in the reasonableness evaluation." Id. The court explained that in evaluating this factor:

> [c]ourts should consider whether the government or the criminal alien have failed to participate actively in the removal proceedings or sought continuances and filing extensions that delayed the case's progress. See id. at 532 (Kennedy, J., concurring); Diop, 656 F.3d at 234; Ly, 351 F.3d at 272. Errors by the immigration court or the BIA that cause unnecessary delay are also relevant. See Leslie v. Att'y Gen. of the U.S., 678 F.3d 265, 269 (3d Cir. 2012); Diop, 656 F.3d at 234; Ly, 351 F.3d at 272; cf. Demore, 538 U.S. at 532 (Kennedy, J., concurring).
>
> We are not saying that aliens should be punished for pursuing avenues of relief and appeals. See Ly, 351 F.3d at 272 ("[A]ppeals and petitions for relief are to be expected as a natural part of the process. An alien who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him."). However, the district court may examine the record to determine whether the alien sought repeated or unnecessary continuances, or filed frivolous claims and appeals. See Diop, 656 F.3d at 234 ("[T]he reasonableness determination must take into account a given individual detainee's need for more or less time ...."). Evidence that the alien acted in bad faith or sought to deliberately slow the proceedings in hopes of obtaining release cuts against the alien. See Chavez-Alvarez, 783 F.3d at 476; Ly, 351 F.3d at 272.

Id. at *15-16.

Additionally, the court instructed that district courts may also consider: "(3) whether it will be possible to remove the criminal alien after there is a final order of removal; (4) whether the alien's civil immigration detention exceeds the time the alien spent in prison for the crime that rendered him removable; and (5) whether the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention." Id. (citing Chavez-Alvarez, 783 F.3d at 478; Ly, 351 F.3d at 271).[8] The Eleventh Circuit emphasized, however, that its list of factors is not exhaustive, and that facts considered by the district court will necessarily depend on the individual circumstances in each case. Id. (citation and quotation omitted).

Applying the Sopo factors to this case, the Court concludes that Gjergji's continued detention without an opportunity to argue for bond is unreasonable. As to the first factor, Gjergji has been in continuos detention under § 1226(c) for eighteen months without a bond hearing. This is well past the brief detention contemplated by the Court in Demore. The First and Third Circuits have held that lesser or equal periods of detention are unreasonable. See Reid, 819 F.3d at 501 (fourteen months); Chavez–Alvarez, 783 F.3d at 478 (one year); Ly, 351 F.3d at 271 (eighteen months). Additionally, Gjergji's detention is not likely to conclude in the near future as the Government's appeal of the IJ's decision to grant Gjergji's application for cancellation of removal remains pending before the BIA. Moreover, both

---

[8]The Eleventh Circuit also pointed to the following additional factors: "the total length of the detention; the foreseeability of proceedings concluding in the near future (or the likely duration of future detention); the period of the detention compared to the criminal sentence; the promptness (or delay) of the immigration authorities or the detainee; and the likelihood that the proceedings will culminate in a final removal order." Id. (citing Reid, 819 F.3d at 500).

parties have indicated they will appeal an adverse decision by the BIA to the Eleventh Circuit, during which Gjergji would remain in detention.

As to the second factor, unlike <u>Sopo</u>, there is no evidence before this Court that either party was the cause of delay. As the Magistrate Judge points out in his Report, "neither side accuses the other of using dilatory tactics or seeking unreasonable delays." Report at 19. Instead, the parties agree that the delay is attributable to overly-burdened immigration court dockets and the complexity of the issues raised in Gjergji's appeal. <u>See id.</u> Nothing in the record suggests that Gjergji "sought repeated or unnecessary continuances, or filed frivolous claims and appeals." <u>Sopo</u>, --- F.3d at ----, 2016 WL 3344236 at *16. To the contrary, although the IJ's initial order was adverse to Gjergji, he prevailed on appeal. Following remand by the BIA, the IJ found that Gjergji's conviction of unlawful sale of a firearm <u>did not</u> constitute an aggravated felony, and granted Gjergji's application for cancellation of removal. Nevertheless, Gjergji remains detained because Respondents are appealing the IJ's decision.

Two additional considerations support this Court's determination that Gjergji's continued detention has become unreasonable. First, Gjergji did not serve any time in prison for the crime that rendered him removable, as he was sentenced to three years' probation, yet he has been detained at Baker County Detention Center for eighteen months. <u>See</u> <u>Ly</u>, 351 F.3d at 271 (granting a bond hearing for a detainee who "spent considerably more time than [his twelve-month criminal sentence] in INS custody awaiting a determination on removal"). Second, Gjergji's civil immigration detention does not appear to be meaningfully different from criminal detention in a penal institution. As Magistrate Judge

Richardson pointed out in his Report, Gjergji currently is being held in the Baker County Jail "at the same location, albeit in a different space, as those who have been arrested for committing crimes." Report at 22. In considering this factor, the Third Circuit pointed out that § 1226(c) detention is civil in nature. See Chavez-Alvarez, 783 F.3d at 478 (citations omitted). However "merely calling a confinement 'civil detention' does not, of itself, meaningfully differentiate it from penal measures." Id. The Third Circuit explained that "[a]s the length of the detention grows, the weight given to this aspect of his detention increases." Id. The petitioner in Chavez-Alvarez had been detained in York County Prison without a bond hearing for approximately one year. Id. Gjergji has been detained in the Baker County Detention Center for eighteen months.

Based on the analysis above, and for the reasons stated in section IV.B.2 of the Report, the Court finds that Gjergji's current "detention without further inquiry into whether it [is] necessary to ensure his appearance at the removal proceedings or to prevent a risk of danger to the community, [is] unreasonable and, therefore, a violation of the Due Process Clause." Sopo, --- F.3d at ----, 2016 WL 3344236 at*18 (citing Diop, 656 F.3d at 234-35). As such, the Court will grant the Petition and order Respondents to grant Gjergji an individualized bond hearing.

Accordingly, it is hereby

**ORDERED:**

1.      Respondents' Objections to Magistrate Judge's Report and Recommendation (Doc. 38) are **OVERRULED**.

2. To the extent set forth above, Magistrate Judge Richardson's Report and Recommendation (Doc. 37) **as supplemented here is ADOPTED.**[9]

3. Respondents' Motion to Dismiss (Doc. 14) is **DENIED**.

4. The Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED**. The Respondents are **ORDERED** to grant Gjovalin Gjergji an individualized bond inquiry within fifteen days of the filing date of this Order. Respondents shall report to this Court within ten days following the bond hearing regarding compliance with this Order.

5. Petitioner's Motion for Bail (Doc. 15) is **DENIED AS MOOT**.

6. The Clerk of the Court is directed to terminate all pending motions and deadlines as moot and close the file.

**DONE AND ORDERED** in Chambers, this 30th day of June, 2016.

*[signature]*
**MARCIA MORALES HOWARD**
United States District Judge

lc23

Copies to:

Honorable Monte C. Richardson
United States Magistrate Judge

Counsel of Record

---

[9]Because the Motion for Bail is moot, the Court declines to adopt sections IV(A) and (C).